ATTORNEY DISCIPLINARY PROCEEDINGS
[iPER CURIAM.*
This attorney disciplinary proceeding arises from fifteen counts of formal charges instituted by the Office of Disciplinary Counsel (“ODC”) against respondent, Eddie L. Stephens, an attorney licensed to practice law in the State of Louisiana but currently suspended from practice.[1] The charges allege violations of Rules 1.1(a) (lack of competence), 1.3 (lack of due diligence), 1.4 (failure to comply with reasonable requests for information), 1.5 (charging an unreasonable and unearned fee), 1.15 (failure to refund client fees), 1.16(d) (failure to properly terminate representation to protect client interests), 3.4(c) (disobedience of obligation under court rules), 5.5 (unauthorized practice of law), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (engaging in criminal acts adversely reflecting on a lawyer’s honesty), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud or misrepresentation) and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct.
UNDERLYING FACTS

Counts I and II

Dawn Dukes retained respondent to represent her in a personal injury matter stemming from a vehicular accident. In June 1993, respondent settled the claim for the-sum of $7,025, and withheld $2,000 from the disbursement to pay Ms. Dukes’ health care provider. However, despite repeated requests, respondent failed to pay the bill.
¡Ms. Dukes filed a complaint, and respondent failed to respond to the ODC’s requests for information. Although a subpoena was issued compelling his appearance for a scheduled deposition, respondent failed to appear.

Count III

In 1992, John Wilson hired respondent to represent him in a worker’s compensation case against the City of Bunkie. The City prevailed at the hearing, and respondent filed an appeal on Mr. Wilson’s behalf. Subsequently, respondent neglected the case, resulting in the appeal being dismissed as abandoned. Respondent failed to notify Mr. Wilson or take any action to protect his client’s rights. Mr. Wilson made numerous attempts to contact respondent, but to no avail.

*1002
Counts IV and V

Mr. and Mrs. Frankie Alexander retained respondent to represent them in a bankruptcy matter, and paid between $200 and $300 in advance fees and expenses. Respondent neglected to file the bankruptcy, and failed to return the unearned fee.
Mrs. Alexander filed a complaint, and respondent failed to provide an answer to the ODC’s requests for information. When a subpoena was issued compelling his appearance for a scheduled deposition, respondent failed to appear.

Count VI

Robert C. McCorqueodale, Assistant District Attorney for Calcasieu Parish, filed a complaint indicating respondent engaged in the unauthorized practice of law while he was suspended from practice. Specifically, respondent represented a defendant named Mary Wright in a criminal proceeding on November 5, 1993 before the 14th Judicial District Court.

Count VII and VIII

Brenda M. Paul retained respondent to represent her in a bankruptcy matter, and paid $125 as a filing cost and $500 in attorney’s fees. Later, respondent obtained an additional L$125 filing fee from his client, for a total of $800. Thereafter, respondent failed to file any bankruptcy pleadings on behalf of his client, and neglected or refused to communicate with his client.
Ms. Paul filed a complaint with the ODC, and respondent failed to file a response to the ODC’s requests for information. Wfiien a subpoena was issued compelling his appearance for a scheduled deposition, respondent failed to appear.

Count IX and X

Helen Brown retained respondent to represent her in connection with a personal injury case. Dr. John Spencer provided chiropractic care to Ms. Brown and respondent guaranteed payment at the time of settlement. When the case settled, respondent paid Ms. Brown in cash and never provided her with a settlement disbursement sheet. Although respondent withheld funds from the settlement proceeds to pay Dr. Spencer’s bill of $2,065, that bill was never paid, despite repeated requests.
After Dr. Spencer filed a complaint, respondent failed to provide an answer to the ODC’s requests for information. Wfiien a subpoena was issued compelling his appearance for a scheduled deposition, respondent failed to appear.

Count XI

In June 1993, Jacqueline McKneely retained respondent to open the succession of her grandmother. Respondent was paid $650 in prepayment costs and attorney’s fees. However, he failed to open the succession and failed to return the unused costs and unearned fee.
After Ms. McKneely filed a complaint with the ODC seeking recovery of the unearned fee, respondent failed to provide an answer to the ODC’s requests for information. La.ter, a subpoena was issued compelling his appearance for a scheduled deposition. In deposition testimony, respondent denied any misconduct. Specifically, he alleged he never represented Ms. McKneely and was unable to produce a work file on her. However, he stated that he prepared succession papers for filing on behalf of an individual who came in with Ms. McKneely to his office, who respondent believed to be Ms. McKneely’s grandfather.

[■¡Count XII

Elliot Joseph Clark retained respondent to represent him in a domestic matter and paid a $1,000 advance fee. Respondent neglected to communicate in a timely fashion with Mr. Clark and, as a result, he terminated respondent as his attorney. Subsequently, respondent refused to refund the unearned fee.

Counts XIII and XV

Velma Mingo filed a complaint alleging she retained respondent and paid him a fee for the criminal representation of her two sons. At the time of retention, respondent was suspended from the practice of law. Judge James Best of the 18th Judicial District Court confirmed respondent contacted him, as counsel for Ms. Mingo’s sons, to obtain a bond reduction.
Judge Best also filed a separate complaint with the ODC alleging unauthorized practice *1003 of law by respondent. In addition to the Mingo matter, Judge Best indicated respondent engaged in the representation of a criminal defendant in Point Coupee Parish in 1993, and represented another individual in criminal proceedings in West Baton Rouge Parish in 1997, which included a jury trial.

Count XIV

On November 27,1996, Marvin E. Donaldson retained respondent to represent him in a criminal matter and paid a fee of $1,000. At the time he was retained, respondent was suspended from the practice of law.
DISCIPLINARY PROCEEDINGS
After the complaints were filed, the ODC conducted an investigation. Subsequently, the ODC instituted formal charges against respondent. He failed to file an answer to the charges. As a result, pursuant to Supreme Court Rule XIX, § 11(E)(3), no formal hearing was held, but the parties were allowed to present documentary evidence on the issue of sanctions. The ODC submitted its evidence and sought disbarment. Respondent failed to present any evidence.
^Thereafter, the hearing committee Sled its report. Relying on the ABA Standards for Imposing Lawyer Sanctions, the committee determined the baseline sanction for respondent’s misconduct was disbarment.[2] The committee found no mitigating factors justifying a more lenient sanction. However, the board recognized the presence of several aggravating factors: prior discipline,[3] pattern of misconduct, dishonest or selfish motive, multiple offenses and bad faith obstruction of a disciplinary proceeding. Further, the committee noted respondent continues to hold himself out to the public as an attorney and represent clients before the courts of the State of Louisiana while on suspension. Accordingly, the committee recommended disbarment.
Subsequently, the disciplinary board issued its recommendation to this court, in which it concurred in the findings of the hearing committee. In addition to the aggravating factors cited by the committee, it further recognized the presence of the additional factors of substantial experience in the practice of law, indifference to making restitution and refusal to acknowledge wrongful nature of the conduct.[4] Based on these findings, the board recommended that respondent be disbarred from practice.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
JsDISCUSSION
The record supports the finding that respondent violated the professional rules as charged. In addition the numerous instances of respondent’s commingling and conversion *1004 of client funds and neglect of legal matters, it is particularly disturbing that respondent continued to practice law when he was clearly aware he was ineligible to do so. Such conduct reveals a blatant disregard for the authority of this court, and demonstrates respondent lacks the moral fitness to practice law. Accordingly, the only appropriate sanction in this case is disbarment.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Eddie L. Stephens be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. All costs in this matter are assessed against respondent with legal interest to commence thirty days from the date of the finality of this court’s judgment until paid.

 Traylor, J. not on panel. Rule IV, Part II, §3.

. Respondent was suspended from the practice of law for a period of eighteen months in In Re: Stephens, 94-1924 (La. 11/18/94), 645 So.2d 1133. This suspension was ordered to run consecutively from an earlier suspension imposed in In Re: Stephens, 624 So.2d 903 (La. 1993), which respondent began serving on October 1, 1993. Respondent never sought reinstatement from the 1994 suspension and therefore has remained ineligible to practice since October 1, 1993.

.The committee relied on the following ABA Standards: 4.11 (disbarment appropriate when lawyer knowingly converts client property and causes injury or potential injury to a client); 4.41 (disbarment appropriate when lawyer knowingly fails to perform services for a client or engages in a pattern of neglect with respect to client matters, causing serious or potentially serious injury to a client); 5.11(b) (disbarment appropriate when lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation); 6.21 (disbarment appropriate when a lawyer knowingly violates a court order); 7.1 (disbarment appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession); 8.1 (disbarment appropriate when lawyer intentionally or knowingly violates the terms of a prior disciplinaty order or has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further similar acts- of misconduct that cause injuty or potential injury to a client, the public, the legal system, or the profession).

. In Re: Stephens, 624 So.2d 903 (La.1993)(re-spondent was suspended for one year for failing to maintain a trust account, placing clients’ funds into his operating account and converting clients’ funds to his own use, without making full restitution); In Re: Stephens, 94-1924 (La. 11/18/94); 645 So.2d 1133 (respondent was suspended for eighteen months for failure to keep a client informed and for notarizing a forged affidavit).

. While not part of the complaints, the disciplinary board recognized the record included a copy of a deposition of respondent’s brother taken on April 21, 1997 at a Baton Rouge law office. Respondent participated in the deposition and represented his brother in connection with a homeowner’s insurance claim against an insurance company. The board concluded the exhibit was “another example of respondent’s continued practice of law while on suspension and his flagrant disregard for the rules of the profession.”